Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EVERETT FINANCIAL, INC. dba SUPREME LENDING,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

Plaintiff PAUL SAPAN ("Plaintiff" and/or "Plaintiffs"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for injunctive relief and damages against Defendant demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant EVERETT FINANCIAL, INC. dba SUPREME LENDING is, and at all times herein mentioned was, a Texas Corporation, headquartered in the State of Texas, doing business in the County of Orange, State of California (hereinafter referred to as "Defendant" and/or "Supreme Lending").

3. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court decided that federal courts have federal question subject matter jurisdiction over such TCPA civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368, 387, 132 S.Ct. 740, 753 (2012).

4. At all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

5. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from March 1, 2019 to the present, including up to and through trial.*

6. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission. 47 U.S.C. § 227(b)(1)(B).

7. Supreme Lending is engaged in a scheme to mortgage refinance services via cold calls to residential phone numbers on the protected federal Do Not Call Registry.

8. Thus, Supreme Lending is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

9. The modus operandi is the same for all the calls in this case, Supreme Lending, either directly or through the use of an agent acting at the direction of Supreme Lending calls various numbers in the United States to sell Supreme Lending' services without regard to whether those numbers are on the Do Not Call Registry or not.

10. Supreme Lending and/or its agents do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

11. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

12. Supreme Lending has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

13. Defendants made ten (5) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- October 5, 2021, 1:31 pm, CID 310-651-6417, CNAM [none].
- October 5, 2021, 1:40 pm, CID 310-215-5262, CNAM [none].
- October 5, 2021, 3:16 pm, CID 310-854-1147, CNAM [none].
- October 5, 2021, 3:19 pm, CID 949-471-0410, CNAM [none].
- October 5, 2021, 3:27 pm, CID 949-471-0410, CNAM [none].

14. Mr. Sapan made a log of all the calls he received from Supreme Lending during or shortly after receiving the calls which includes the date and time of the call and the Caller ID information as well as brief notes about what happened during the calls which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

15. All of the calls illegally blocked transmitting Caller ID Name information. *See*, 47 U.S.C. § 227(e) (Truth in Caller ID Act of 2009).

16. And all but two of the calls used wildly different Caller ID numbers even though all the area codes for the Caller ID numbers are in Southern California like Mr. Sapan's area code which is consistent with an illegal telemarketing practice of transmitting false Caller ID numbers that are intended to look local to

the called party based on the victim's own area code in an attempt to induce more victims to answer the calls, which is also illegal. *Id*.

17. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

18. Mr. Sapan never gave any Supreme Lending or any other person, agent, employee or entity associated with Supreme Lending express written permission to call him, nor does he have an established business relationship nor personal relationship with Supreme Lending or any other person, agent, employee or entity associated with Supreme Lending.

19. During the first call on October 5, 2021, 1:31 pm, Supreme Lending used Caller ID Number 310-651-6417 and illegally blocked a Caller ID Name from appearing and, since he could not tell who was calling, Mr. Sapan answered the call.

20. The caller identified as "Mike" from "Mortgage Savings Center", asked Mr. Sapan about his interest in refinancing.

21. Since "Mortgage Savings Center" sounds generic and made-up and Mr. Sapan knows from extensive experience that junk telemarketers constantly use vague and generic fake company names to introduce their pitches in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was.

22. After Mr. Sapan played along saying he owned a home and had a mortgage, "Mike with Mortgage Savings Center" brought his supervisor Keith on the line and tried to bring the real mortgage refinance company who hired these telemarketing agents on the line but the transfer/merge to them went to voicemail so they said they would call back.

23. Mr. Sapan very specifically did not consent to any callback and hung up.

24. At this point, after the first call, Mr. Sapan still did not know who was behind this calling since the transfer from the telemarketing agent to the company actually selling the mortgage refinance did not work.

25. Supreme Lending called again at October 5, 2021 at 1:40 pm using the CID number 310-215-5262 and when Mr. Sapan answered it was "Keith with Mortgage Savings Center" saying he verified my loan information and then brought a person on the line who self-identified as Danny from Supreme Lending who began pitching Supreme Lending's mortgage refinance services.

26. Mr. Sapan played along briefly and asked a couple questions before telling them not to call him any more in order to confirm that this was actually Supreme Lending and Danny from Supreme Lending stated he was located in Orange County but their headquarters was in Dallas, Texas.

27. Supreme Lending never gave him the opportunity to tell them never to call him because the call was dropped apparently because of some technical glitch.

28. Also, "Keith" lied at the outset of the second call when he said he verified Mr. Sapan's loan information because Mr. Sapan had never given them any loan information.

29. Supreme Lending called again at October 5, 2021 at 3:16 pm using the CID number 310-854-1147 and when Mr. Sapan answered it was "Keith" asking if Danny had called back and immediately after Mr. Sapan said no the call was dropped or hung up.

30. Supreme Lending called again at October 5, 2021 at 3:16 pm using the CID number 949-471-0410.

31. Like the other calls this used a new CID number and since Mr. Sapan did not know who it was he answered.

Complaint

32. Danny from Supreme Lending introduced himself again and since Mr. Sapan now knew who was behind this junk call, he hung up.

33. Supreme Lending called again at October 5, 2021 at 3:27 pm using the same CID number 949-471-0410.

34. Since this call used the same CID number as the last call, Mr. Sapan knew it was from Supreme Lending and did not answer.

35. As noted in Exhibit 1, Mr. Sapan answered all but one of these calls.

36. Each time he answered the caller self-identified as being with Supreme Lending or in the case of the first call tried to bring a Supreme Lending representative on the call but failed.

37. Each time he answered the caller tried to sell mortgage refinance services

38. Mr. Sapan never agreed to any callbacks nor did he express interest in the mortgage refinance services.

39. Mr. Sapan did not answer the October 5, 2021 at 3:27 pm call because it used the exact same CID number (949-471-0410) as the previous Supreme Lending call and he knew who was making the illegal call.

40. Plaintiff alleges on information and belief that Supreme Lending transmitted the October 5, 2021 at 3:27 pm to Mr. Sapan's residential line which was on the federal "Do Not Call" Registry to sell their mortgage refinance services just like they did in the previous call using the exact same CID number and in all prior calls.

41. Plaintiff pleads on information and belief that to the extent Supreme Lending may have relied on any agent or other entity to make telemarketing calls on its behalf, Supreme Lending had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

42. Alternatively, Plaintiff pleads on information and belief that to the extent Supreme Lending may have relied on any agent or other entity to make telemarketing calls on its behalf, Supreme Lending hired that agent to interact with the public on Supreme Lending' behalf using Supreme Lending' name and therefore gave implied authority to represent Supreme Lending.

43. Alternatively, Plaintiff pleads on information and belief that Supreme Lending ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct.

44. Supreme Lending may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## **LIABILITY OF SUPREME LENDING**

45. As detailed above and in Exhibit 1, the caller self-identified as being "with Supreme Lending" or always tried to bring a sales representative from Supreme Lending on the line in every call that Mr. Sapan answered.

46. As detailed above, Mr. Sapan did not answer one of Supreme Lending' illegal calls because it used the same Caller ID number as the call right before it which he did answer and he therefore knew it was Supreme Lending calling to attempt to sell mortgage refinance like all the other calls.

47. Plaintiff pleads on information and belief that the officers, managers and employees for SUPREME LENDING knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made because the calling was cold call junk telemarketing not directed to any specific person, always followed the same basic script involving calling representatives and a technically sophisticated calling system that could illegally hide Caller ID Name and spoof

false Caller ID numbers which would look local to the victim because they used area codes in the same state all of which indicates that this was an intentional and well organized corporate sales effort and not a rogue employee or random event.

## POSSIBLE AGENT LIABILITY ALLEGATIONS

48. Plaintiff pleads on information and belief that to the extent Supreme Lending may have relied on any agent or other entity to make telemarketing calls on its behalf, Supreme Lending had direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent and/or authorized such actions by, inter alia, allowing the agent to bring direct Supreme Lending representatives into the call to attempt to complete the sale.

49. Alternatively, Plaintiff pleads on information and belief that to the extent Supreme Lending may have relied on any agent or other entity to make telemarketing calls on its behalf, Supreme Lending hired that agent to interact with the public on Supreme Lending' behalf and therefore gave implied authority to represent Supreme Lending.

50. Alternatively, Plaintiff pleads on information and belief that Supreme Lending ratified the making telemarketing calls on its behalf if made by third-party agents by knowing of the illegal conduct and failing to repudiate the conduct for all the reasons given above.

51. Plaintiff pleads on information and belief that to the extent Supreme Lending uses any agents to make calls, Supreme Lending has ordered their agent to make the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit.

52. Plaintiff pleads on information and belief that to the extent Supreme Lending uses any agents to make calls, Supreme Lending knew or reasonably

should have known (implied agency), that its agents were was making the illegal calls to residential numbers on the National "Do-Not-Call" Registry.

53. Plaintiff pleads on information and belief that to the extent Supreme Lending uses any agents to make calls, Supreme Lending explicitly condoned the actions of such agents in making the illegal telemarketing calls to residential numbers on the National "Do-Not-Call" Registry for its benefit by condoning their actions afterwards.

54. Plaintiff pleads on information and belief that to the extent Supreme Lending uses any agents to make calls, Supreme Lending explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for the benefit of Supreme Lending.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

55. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

56. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

57. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

58. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings

or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

59. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

60. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

61. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

62. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

63. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose*

Case 8:23-cv-00362-DOC-KES   Document 1   Filed 03/01/23   Page 12 of 16   Page ID #:12

*residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from March 1, 2019 to the present, including up to and through trial.*

64. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

65. Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

66. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant's call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

67. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but

- 12 -
Complaint

are not limited to, the following:

    a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

    b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

    c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

    d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

68. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since Defendant has repeatedly called the Class to sell their financial products.

69. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiff and class counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor class counsel have any interests adverse to those of the Class.

70. **Superiority of a Class Action**: Plaintiff and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court

system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

71. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION: TCPA VIOLATION**
**CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY**
**(On Behalf of the Plaintiff Class)**

72. Plaintiff realleges all paragraphs above and incorporates them herein by reference.

73. Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

74. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her

telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

75. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

76. Defendant has called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

77. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant's violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $500.00 for each violation of 47 U.S.C. § 227(b)(1)(B)

3. For an award of $1,500.00 for each such violation found to have been willful;

4. For injunctive relief pursuant to 47 U.S.C. 227(c)(5)(A);

On ALL CAUSES OF ACTION:

5. For attorney's fees pursuant to all applicable federal and state statutes;

6. For costs of suit herein incurred; and

7. For such further relief as the Court deems proper.

DATED: March 1, 2023        **PRATO & REICHMAN, APC**

/s/Christopher J. Reichman, Esq.
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan